First case of the afternoon, People of the State of Illinois v. Joshua Winkler, 416-0180. For the appellant, Mr. Cagle, and for the appellee, Ms. Brooks, you may proceed. May I please the court? Counsel. Your Honor, the trial court abused its discretion in this manner by imposing a 26-year sentence on the defendant. Specifically, we contend that the trial court improperly weighed factors in aggravation and mitigation and improperly considered factors in aggravation that are inherent in the elements of the offense. With respect to the first argument, Your Honor, the trial court's weighing of the factors, the statutory range in this case was from six years on the low end, a minimum, to 67 years on the high end. Broken down, that would be 60 years available to the trial court as to count one of predatory criminal sexual assault and a period of probation for three to seven years of incarceration for aggravated criminal sexual abuse. Your Honor, in this situation, the court found three primary factors in aggravation that it referred to over the course of the sentencing hearing and issuing its ruling and in the motion to reconsider that was filed by trial counsel. Specifically, emotional harm to the children, the fact that the defendant was in a position of trust to the victims, and the need for deterrence of others to commit similar crimes. Your Honor, in putting the emphasis on these factors, it is suggested that the emotional harm to the children as noted by the First District in the case of People v. Calvo is generally inherent to any type of sexual assault or sexual abuse case involving a minor child. That would seem to be considered by the legislature in setting the statutory sentencing range with a minimum of six years and also making this statute applicable to the truth in sentencing provisions of the sentencing code, which mandate 85 percent service time. The issue of deterrence would seem to fit within the same grouping. Your Honor, as to position of trust, this was specifically an element, but in count two, of the state's information charging the aggravated criminal sexual abuse charge. So, essentially, that's what the aggravation factors boil down to in the eyes of the trial court. There was nothing specific about the individualized facts of the offense or the individualized effects on any of the two either an ordinary predatory criminal sexual assault case or an ordinary criminal sexual abuse case in this context. Your Honor, there was substantial mitigation that was apparent in the PSI and also presented directly by the defendant. At the outset, the defendant had no prior criminal history. The PSI revealed only a juvenile offense of disorderly conduct for which the defendant apparently did 100 hours community service. No adult criminal record for a 34-year-old defendant. I would also note, as I did in my brief, that there was an immediate guilty plea in this case. The defendant was arraigned, I believe in February. At the next pretrial, he pled guilty to both counts in an open plea with no consideration from the prosecutor. The counts were not amended. He pled to the counts as they were charged. He faced a mandatory sentencing range after being six years and a maximum of 67 years. After being fully advised by the court, these were mandatory consecutive and 85% charges. The PSI revealed that the defendant was sexually abused as a child by both a babysitter and a relative, that his parents divorced when he was at a young age, that he had the support of some of his other family, including a new spouse, and he had children with that new spouse, that apparently there were no allegations of abuse related to those children. The defendant was current in his child support obligation to his first wife, according to the PSI. He had maintained steady employment and housing. In addition, in conducting the PSI, the Probation Department of Fort County conducted an LSI-1 test, an objective test designed to determine the defendant's risk to re-offend, and the defendant scored only a moderate risk to re-offend on that test. So it appears from the facts that I've presented, and I think these facts are supported and not substantially disputed in the record, that the defendant was 34 years old, had reasonable rehabilitative potential based on his age and the LSI score that was administered by probation, had no prior history of criminal activity, had a history of steady employment, and had some mitigating factors related to his own upbringing as a child. And as often is the case in these type of cases, we have a defendant convicted of sexual abuse that was also him or herself sexually abused as a child. So I think given those circumstances, I go back to the legislative scheme involving these type of offenses. Clearly, the legislature did intend harsh punishments on these type of crimes. We concede that. What about the Blair case and the argument by the state that you have forfeited this issue? The defendant did by not raising it in his post-trial motion. Judge, are you referring to the double enhancement argument? Your Honor, the double enhancement argument didn't become clear to me as appellate counsel until I had read the transcript of the motion to reconsider. No, I'm sorry. I'm not being clear. It's not your forfeiture. It's the defendant forfeited it by not raising this issue in his post-trial motion or post-sentencing motion at the trial level. Your Honor, correct. The post-trial motion to reconsider, the words double enhancement were not used. It appears to be a standard motion to reconsider for want of a better term that argues... Who is the attorney in that? Harvey Welch? It was Harvey Welch, Your Honor. Is he still the public defender for Ford County? Yes, he is, Your Honor. Under contract. Okay, so I'm sorry I interrupted you. Go ahead. Mr. Welch did not include double enhancement in the motion to reconsider. Honestly, I don't know why he didn't because he made a double enhancement objection at the sentencing hearing when the court reviewed the videotape of the minor children speaking to the DCFS investigator in this case. So obviously both Mr. Welch and the court and the state's attorney were aware of double enhancement prohibitions, such as using age or issues inherent to the element of the offense in the sentencing. It wasn't included in the motion to reconsider. Why shouldn't we hold it forfeited? Your Honor, I would ask that it be reviewed under a plein air doctrine, number one, in light of the defense counsel's awareness of the double enhancement principle. And number two, I believe there is some crossover between the weighing of the factors and the concept of a double enhancement. It's not entirely clear from the trial court's bench ruling what particularly led to this sentence. The most instructive statement occurred at the motion to reconsider, which is after Mr. Welch filed the motion, when the trial court, and I believe it was the last line of the hearing, said that the position of trust between the defendant and the young age of these victims was the primary thing that led the court to the sentence it gave. That was the court's statement at the motion to reconsider. Now, that was when, in my reviewing the case, I decided to add double enhancement, the double enhancement argument to this, because that was when the trial court specifically said trust, and specifically said youth was the main factors that led to the sentence. And at that point, obviously it's too late for it to be reconsidered in Mr. Welch's post-trial motion, but I don't think it's too late to be considered on appeal, and I don't think it's forfeited in that context, when appellate counsel's review of the record would be the first time that directed statement on what led to the sentence was made by the trial court. So I guess that's, I'd look at it under plain error, Your Honor, and I'd look at it under the principle that it became most clear in the context of the trial court's verbal ruling at the motion to reconsider. I hope that answers your question. Thank you. Your Honor, the facts of this case, and the court is entitled to consider the facts of the case. What was charged in the Bill of Information was, on the predatory count, was that an act of sexual penetration occurred. But the factual allegations behind that charge said that the defendant placed his fingers on the vagina of the victim. The statute says, it's a little bit different than the other sexual assault statutes, was distinguished between sexual penetration and sexual conduct. This particular statute says any act of sexual contact, however slight, would give rise to the predatory charge. So I don't think that changes what was pled to. But I do think that in context of evaluating the seriousness of the offense, generally sexual penetration offenses are treated more harshly in the law than sexual conduct offenses within the Illinois scheme of sex offenses defined in the criminal code. The factual base pleading on this information does not allege an act of sexual penetration, and I don't believe the video that was viewed by the trial court in its evaluation of the facts of the case would have alleged that. I'm not saying the defendant wouldn't have still been found guilty of this particular charge, but I am saying in analyzing the seriousness of the offense and the conduct that actually occurred, in light of the sentence that was given, I don't know that we have a penetration case here. The information, and this is a fact pleading jurisdiction, certainly doesn't charge factually a penetration case. I don't believe there was anything about the facts of this case or about the emotional harm done to the victim that takes it out of the realm of a normal, if there can be such a thing, predatory sexual assault case. In any of these cases, we have a serious crime. In any of these situations, the legislature has determined that a six-year prison sentence at a minimum is appropriate. My question is in this case, and I guess the basis for this part of my appeal, is if this isn't a six-year case or a 10-year case or a 12-year case or something at the lower end of this range, when the defendant has no priors, is a young man, was employed, is supporting his dependents, both, ironically, the victims and other children, is a low-risk to re-offend on probation test, when those factors are all in place, and we have single-count information that include a 12-year-old victim, which, although young, is the oldest age that can still fit into the predatory sexual assault statute, I don't know how this became a case where you go four-and-a-half times the minimum sentence. With those factors in place, if we had a younger victim, God forbid, but if we had a younger victim than 12, again, the maximum age where this goes beyond a mere four- to 15-year sentence, that would be one thing. If we had past criminal history, you would assume those type of re-offenders would be at the higher end of the sentencing range. If we had someone who was beyond rehabilitation, that was a high-risk to re-offend, that was 50 years old instead of 34, that had no history of being a productive member of society, I would think then maybe we would be into the sentencing area that the judge eventually ended up with. But in this particular case, I guess, and I pose this question in brief, if this isn't a lower-end-of-the-range case, I question what would be with the factors that I've just enunciated to the Court. Your Honor, on the double-enhancement issue, something took this case to four-and-a-half times the minimum sentence. Something did. And in spite of the facts that I've just pointed out, the Calva case and I believe it's the Edwards case, the Freeman case, all suggest, and this Court, I think, in the case of People v. Carter, suggested that in certain circumstances, even though we have a serious offense, you don't aggravate the sentence with something that is either a direct element of the offense, obviously, or something that is inherent or implicit in the offense itself. Well, deterrence, for instance. I'm not saying deterrence doesn't apply to criminal sexual assault sentences. But we have a six-to-60-year sentencing range. If that's not a deterrent, I don't know what is at 85 percent. Emotional harm, there's always going to be emotional harm, as the Calva Court noted. That is part and parcel to sexual abuse. That is why we punished it so harshly. That's why we have all the requirements we have in terms of truth in sentencing registration, mandatory consecutives, and those kinds of things that the legislature accounts for. And the position of trust, Your Honor. But in Calva, there was no psychological harm presented to the trial court. Is that a distinction? I suppose that the question is, yes, Your Honor, there was no evidence at all of psychological harm presented to the trial court. In this case, there was not evidence by any psychological expert of ongoing psychological harm. I believe that the two victims wrote letters to the court. They did not testify at the hearing. I also believe that the court reviewed the, I know the court reviewed the DCFS interviews with the children. The children were not present. That's the only evidence of psychological harm. The only two sources that any evidence of psychological harm could have come from. What about statements from the mother? Your Honor, conceitedly, they could come from their mother, too. I guess I misspoke. Ms. Webb did testify and write a letter to the court. Again, though, when you have an issue of a 12 or 13-year-old that's been sexually abused, it's not a matter of violated triggerings of the defendant being sentenced on this particular statute, either one of them. You're always going to have some kind of emotional harm. You're going to have trust issues. You're going to have issues where the child necessarily doesn't ever want this to happen again. And it's protective and defensive and so forth. I did not see anything about this particular case. I didn't see any findings by the trial court in its case, specifically saying these kids are worse than the normal predatory sexual assault victim. This kid is worse, the 13-year-old victim, than the normal 13-year-old who's assaulted by someone in a position of trust or authority or supervision, as that statute reads. I didn't see any findings by the trial court that this was worse. The prosecutor made arguments based on the youth of the children. He said these children, in his arguments, will always know what happened to them. Those were his exact words. Well, anyone will always know what happened to them in that type of case. It doesn't take it out of the realm of any other crime in this context. Do you give it any credence that it is different because it is a brother and a sister, so we have victims of two different sexes, and rather than a stepfather or a boyfriend or whoever, it's a father? Because that doesn't necessarily, I mean, when you say trust, authority, supervision, that isn't always a father or a blood relative. But in this instance, it is. Your Honor, if I could address your question. Are you asking in both the weighing of factors, grounds, or in the context of double enhancement? Am I correct? No, you've got a few more minutes. Either or, it doesn't matter. I mean, it's something that would be floating around the courtroom, even if nobody mentions it. It would be preferable if the court said that was one of the factors, because I think that would be legitimate, wouldn't it? I would think this... This makes it more difficult for this family, because it is two children in the same family, and it's not only a position, a person in a position of trust, it is the blood relative, the father of these children, and the whole family and the children are going to be marked by this for the rest of their lives. If he had said that, that would be okay, wouldn't it? If he had said that, then I think you could colorably make an argument that that makes it worse, because, okay, you've got two people within the same family, very close in age, as these two... And it's a father rather than a stepfather who came into the family a year and a half before. Well, Your Honor, in the context of the father, yes, it's a breach of trust that probably would go beyond what a stepfather would be. It goes beyond breach of trust. It goes beyond what a high school coach would be, or a junior high coach. Agreed, Your Honor. I agree that a parent is closer than a step-parent, and family members and household members are closer than uncles, cousins, and coaches. I agree with that point. But Your Honor has also hit on the point that in most of these type of cases where a victim is 13 and 12, when we look at the case law, it is typically someone who is at least a household member, or a coach, or a paramour of mom, or a paramour of dad, something. It is typically someone that is at least a household member, and it is very often, unfortunately, a father. We're talking about a blood relationship here. But in the context of the double enhancement argument, if I can continue to answer the Court's question, count two charge that he was in the charging instrument, and the defendant was sentenced to four years on this charge consecutive, and the count two charge that the defendant was the father, and by being such, held a position of trust. And I think when you talk about trust in the context of sentencing after the fatherhood relationship that the Court just pointed out is mentioned in the charging instrument of one of the counts, I believe you're in double enhancement territory at that time when you spend half of the time. And I guess I would conclude my argument and save anything else for rebuttal at that point. Thank you. Ms. Brooks? Thank you, Your Honors. I'm Allison Paige Brooks on behalf of the people. May it please the Court and Counsel. First of all, this Court should decline an invitation by the defendant to re-weigh the factors. The defendant claims that the factors were properly weighed, but this Court should not re-weigh the factors, if that's what the defendant is asking. With respect to the defendant's claim that there was a reliance on the age of the victim, there's no clear, obvious error that that occurred. I couldn't really find exactly what the defendant was relying on, although it appears that he's emphasizing the remark at the hearing and the relationship and the trust between Mr. Winkler and these young victims is what led the Court to give the sentence that it gave. So there is a reference to the word young with respect to victims, but I think the point of that sentence was that it was the relationship, the fact that this was the natural blood father of the victims that led to the sentence, not the fact that these were quote, young victims. That notice there was no clear, obvious aggravation resulted from the fact that these were young victims. This is the point. So for that reason, the argument is forfeited, should not be considered plain error. The reliance on a Calva case is distinguishable because here, like as in the Liggins case, where there is some evidence in the record of psychological damage, that can be considered, that should not be ignored. This is something that allows it to be greater than just what is simply inherent in the nature of the case. So the defendant's claim about the trial court's consideration of a position of trust, this is only referring to count two, so it's not a basis for reversing the 22-year sentence on predatory. The count two sentence for criminal sexual, aggravated criminal sexual abuse, I think it was, that one had the elements of trust, authority, or supervision, and a trial court considered the nature and extent of that element. So rather, albeit a position of trust, authority, or supervision, the exact nature and extent of that element is something that is proper to consider, not plain error, no clear, obvious error. The state does recognize the defendant's claims of substantial mitigation in the record. However, as always, the seriousness of the offense is not, the defendant's prospects for rehabilitation are not entitled to greater weight than the seriousness of the offense. This is undoubtedly still one of the most serious offenses in the history of abuse crimes in Illinois. The defendant says that it's penetration with fingers on the vagina. Still undoubtedly very, very serious. This client has a penalty, a statutory penalty, of up to 60 years in prison. This is one of the most serious offenses possibly to be committed short of murder. So, 22-year sentence is actually below the midpoint of the range, and the defendant emphasizes, well, it's still four and a half times the minimum. It's actually a fairly lenient sentence as far as these sorts of things are concerned. So the defendant got plenty of credit for his substantial mitigation in the record, and in light of the evidence of aggravation, the sentence is not an abuse of discretion such that no reasonable person would agree with it. So therefore, this Court should affirm the sentence, reject the defendant's claims of plain error, and I'd entertain any questions you have, Your Honors. I just thank you for your question. Thank you. Your Honor, I understand that the Court has to consider the seriousness of the offense, but I think in the sentencing context, the seriousness of the offense has to be viewed, and I've tried to write this the best I can, but it has to be viewed in the context of someone who has been convicted of committing the offense. We understand that predatory sexual or criminal assault is one of the most serious crimes recognized under the Illinois Criminal Code. That's why there's a six to sixty. That's why it's treated the way it is. The legislature accounted for the seriousness of the offense. Now within the defendant's commission of that offense, which is what we should be looking at in a sentencing context, what's his prior record? What's his potential for rehabilitation? What was he like before we found out that this happened? What's his history? What has he done to accept responsibility? Those are the things that we're arguing here. The Court has every right to consider the seriousness of the offense, but that was considered by the legislature in this sentencing scheme. In the context of this particular offense, again, the case is generally distinguished. We have a range of one to a newborn to a twelve-year-old that this offense could apply to as charged by the defendant's conduct. Over thirteen of these cases, we have a range of four to fifteen-year offense. The victim in this case, in the predatory case count one, was twelve. We have sexual conduct, sexual contact, and sexual penetration. Those three things that can give rise to a sexual charge under Illinois sexual assault and abuse law. Penetration is generally the most seriously punished of those things. Contact on the lower end of the spectrum, and then conduct would seem to imply something between the two. Mr. Cagle, let me ask you something that has nothing to do with this. I just want to take a moment to raise a question out of my curiosity. In a case like this, when the decision of this Court comes out, dealing with the fact that this was not an argument raised by trial counsel, and we have to deal with this whole forfeiture issue, in a small county like Ford County, is there ever any discussion, as the trial court I know gets these decisions, to say, you know, you really, I mention this because we see this a lot, you really ought to be paying more attention to these issues so that if there is a claim here that might be raised on appeal, given the statute and Supreme Court decisions, and this Court don't be forfeiting it, don't mail in your post-sentencing motion, counsel? Does that ever happen, or could it happen? To be honest, I don't believe it happens enough. Well, it's a small county, and a new judge, relatively speaking, maybe you can carry that message back, that this would be a good thing. I will, and I don't want to stand here and be critical of counsel that's done this longer than I've, twice as long as I have. I understand. The situation I'm in is a situation in this case, Your Honor, the trial court ordered a sexual, a sex offender evaluation, for some reason it was never done. Now, can I make an ineffective assistance of counsel in that case? No, because I don't know whether the evidence would have been mitigating or aggravating, thus I can't even pretend to you that I can satisfy Strickland based on that particular thing. All I know is, and I'll conclude, is that this sentence got awful heavy, and I don't want to be critical of counsel, but it was so high for someone with no criminal record some way, and I don't know whether that was the double enhancement, or a weighing, improper weighing of the factors. The trial court, I'm sorry, was not that clear in its ruling as to what specific factors were, did this. The clearest thing was said was in that last sentence. Well, the point that Justice Connick made about the brother and sister and how this might be aggravating in itself, the trial court doesn't have to specify all this on the record, does it? I mean, these are facts which are there, and we're supposed to be assuming the trial court properly considered these and other matters in imposing sentence. The trial court's presumed to have heard the evidence and presumed to have read the CSI, I totally understand, or PSI, I'm sorry, I totally understand. Again, I feel that when you look at the Juarez case cited on brief, the father relationship, but that was not what the trial court said. What the trial court said was trust, and I think that creates some other problems. Thank you, counsel. Thank you. Take the matter under advisement. With readiness in the next case.